# THE SUPREME COURT

OF.

## . OREGON.

## MARCH TERM, 1890

[Filed April 9, 1889.]

## J. M. BOWER, RESPONDENT, v. BEN HOLLADAY, APPELLANT.

Under § 281 and Sub. 2 of § 276 of the Oregon Code, a judgment creditor, whose judgment was recovered against the debtor during the lifetime of the latter, is entitled to have an execution issued on the judgment against the property of the debtor, or for the delivery of real or personal property, notwithstanding the death of such debtor. The authority, however, contained in said sections, must be construed with reference to other provisions of the Code empowering county courts, sitting in probate, to direct the payment of debts and legacies, and the distribution of the estates of intestates; and to order the sale and disposition of the real and personal property of deceased persons; and which would seem to be in conflict with the right to seize or levy upon assets by virtue of the execution, in order to satisfy the judgment, while they remained in the hands of the executor or administrator for the purposes of the administration, unless sanctioned by the authority of the county court in which the proceedings were pending. Nor should such sections of the Code be construed as giving preference in favor of the creditor in the enforcement of payment of the debt, without establishing an equity superior to that of the other creditors of the debtor's estate. But the latter questions not being involved in the case, the views expressed in the opinion regarding them may be deemed merely suggestive.

APPEAL from the circuit court for Multnomah county.

On the twentieth day of February, 1886, the respondent recovered a judgment in said circuit court, against said Ben Holladay, for the sum of $18,900, to bear interest at

the rate of 10 per cent. per annum, and for the further sum of $375 costs and disbursements. Execution was duly issued upon said judgment, on said twentieth day of February, 1886, and afterwards returned wholly unsatisfied. Ben Holladay died on or about July 7, 1887, leaving a last will and testament, in which said Joseph Holladay and others were appointed executors. Joseph Holladay alone qualified as executor of the will, and letters testamentary were duly issued to him on or about April 11, 1888. On the twentieth day of October, 1888, a second execution was issued on said judgment and returned unsatisfied on the fifth day of November next thereafter. On November 9, 1888, upon leave obtained therefor, a third execution was issued upon said judgment, wherein, after reciting the recovery of the judgment, the issuance and return of the two former executions, the death of Ben Holladay, the granting of letters to said Joseph Holladay, and that more than six months had elapsed since; • and that Joseph Holladay and George W. Weidler held certain property as receivers, and George W. Weidler as trustee held or had under his control certain other property belonging to said deceased, including about 5,331 shares of capital stock of the Willamette Real Estate Company, and that the judgment was wholly unpaid, and that leave of the court had been obtained permitting the issuance of execution, the sheriff was directed to satisfy said judgment and costs out of any property in the hands of Ben Holladay's personal representatives, heirs, devisees, legatees, tenants of real property, or trustees as such, and especially out of any property belonging to the estate of Ben Holladay in the hands of Joseph Holladay, executor and personal representative of said Ben Holladay, or in the hands of George W. Weidler as trustee, excepting property held by Joseph Holladay and said Weidler as receivers, and specially directing said sheriff to satisfy said judgment and costs out of the said 5,331 shares of capital stock held by said Weidler as trustee.

After the issuance and delivery of said execution to the

sheriff of the county of Multnomah for service, the said Joseph Holladay moved the said circuit court quash the same. The motion was founded upon the affidavit of the said Joseph Holladay, which contained substantially the facts above set out, and the further statement that the said judgment recovered by the said Bower was, on the eighteenth day of October, 1888, presented to the affiant, as such executor, for examination and allowance or rejection, as required by law; that the large amount of said claim and attorney fees, and the large amount of other business and claims against said estate, required time for consideration and examination; that affiant had been exerting himself to ascertain the true condition and justice of the claim and other claims, but for want of sufficient time had not yet so informed himself as to be able to pass upon said claims presented within the last month, about thirty-four in number and more than two hundred thousand dollars in amount; that said judgment was not, to the knowledge of affiant. a lien upon real or personal property belonging to said estate. That on the tenth day of November, 1888, a copy of said execution—the third execution, with the certificate and notice thereto attached—was delivered by said sheriff to George W. Weidler; also, a duplicate thereof was on the same date delivered to said Weidler addressed to the Willamette Real Estate Company, which notice was to the effect that the sheriff attached all debts, moneys, etc., in his hands belonging to the estate of Ben Holladay, and especially said capital stock of the Willamette Real Estate Company; that there was a large amount of debts due and owing from said estate to divers parties, and, as affiant was informed, said estate would be unable to pay more than a small percentage thereof. That the parties controlling said judgment, and the said sheriff, were urging said Weidler to make return and answer to such process; and that affiant was informed said judgment was not a preferred debt against said estate and was not a lien upon any particular property, real or personal; and that the said execution was not issued or directed to be levied upon any

particular property, but ran generally against the prop-erty of said estate, and that the same was unlawfully issued. The said circuit court, afer hearing said motion to quash the said execution, denied the same, which is the decision appealed from.

*R. & E. B. Williams,* for Appellant.

*Williams & Wood,* for Respondent.

THAYER, C. J.—The question presented herein for the consideration of the court is: Whether an execution can be issued upon a judgment after the death of the judgment debtor. Our probate jurisdiction is so extensive, and has been resorted to so generally in the adjustment and set-tlement of claims against the estates of deceased persons, that no other mode to effect such object has been consid-ered than that pointed out in the probate Act. Hence, the proposition that an execution against the property of a judgment debtor can be issued after his death upon a judgment recovered during his lifetime, is liable to be startling, as it creates the impression that the officer to whom the writ is issued can seize and sequester the prop-erty of the deceased regardless of the authority of the probate court or the order of preference in the payment of claims against the estate as provided by law. No at-tempt seems to have been made in this State to issue an execution against a deceased person, except in the case of *Knott* v. *Shaw,* 5 Or. 482. It was held in that case, as appears from the syllabus, that the statute gave the State a lien upon all property, real and personal, of a criminal from the time of the commission of the crime; and that when such property had been sold, either by the party convicted, or by his executor or administrator, it was chargeable with the incumbrance in the inverse order of its alienation—that the property last sold was to be first charged. This statement of the law in the case was, in my opinion, altogether too broad, and is liable to be mis-leading. The latter proposition contained in the statement, to the effect that when such property had been sold by the

executor or administrator it was chargeable with the incumbrances, cannot in my judgment be maintained. The statute which gives the State a lien in such a case did not intend to allow the State to enforce it except in accordance with its other provisions. And when the party upon whose property the lien attached has died, and the property has gone into the hands of an executor or administrator to be administered upon, its disposition in accordance with the law relating to probate proceedings must be regarded as binding. The State, no more than an individual, having a lien in such a case, can remain passive until the property has been fully administered upon and then assert the lien. The real property sold by the deceased in his lifetime would doubtless be subject to the lien, which could be enforced against it; but that which went into the hands of the administrator became subject to the jurisdiction and control of the probate court as effectually as the property of a bankrupt is subject to the jurisdiction and control of a court of bankruptcy. In the case of property coming within the jurisdiction of a probate court, a lien upon it must be enforced in accordance with the laws governing the proceedings in such court, otherwise its orders and decrees, although confessedly within its jurisdiction, would be without force. As to the mere question, however, of the right of a judgment creditor to have an execution issued upon a judgment against a deceased person, to enforce the judgment against the estate of the latter, I do not think there can be any doubt.

The Code, § 281, provides that, "Notwithstanding the death of a party after judgment, execution thereon against his property, or for the delivery of real or personal property, may be issued and executed in the same manner and with the same effect as if he were still living; but such execution shall not issue within six months from the granting of letters testamentary or of administration upon the estate of such party, without leave of the county court or judge thereof;" and subdivision 2 of § 276 of the Code provides that, "If it be issued after the death of the

judgment debtor, and be against real or personal property, it shall require the sheriff to satisfy the judgment, with interest, out of any property in the hands of the debtor's personal representatives, heirs, devisees, legatees, tenants of real property, or trustees as such;" § 1136 of the Code provides that, "A claim established by judgment or decree against the deceased in his lifetime need not be verified by affidavit, but it is sufficient to present a certified copy of the judgment docket thereof to the executor or administrator for allowance or rejection, as in other cases; but this section is not to be construed to prevent an execution from being issued upon such judgment or decree, as elsewhere provided in this Code." The last clause in the above section is clearly an affirmance of the rights to issue an execution upon such judgment, although negatively expressed. And § 1185 of the Code, which provides that, "If such debt has been established by judgment or decree against the deceased in his lifetime, such judgment or decree, if the proceeds of the personal property be not sufficient to satisfy it, may, in the discretion of the court or judge thereof, be either satisfied from the proceeds of the sale of the property by the executor or administrator, upon which it is a lien, or enforced by execution against such property. Such sale by the executor or administrator discharges the property from the lien of the judgment or decree, but the same attaches to the proceeds thereof, after deducting therefrom the expenses of the sale," also recognizes the same right.

It is somewhat remarkable that the legislature provided two modes in the same Act, and at the same time, for the enforcement of payment of this character of claims; but it has evidently made such provision, as will be seen by reference to the sections of the Code herein set out, and I see no other alternative than to adopt the rule applied by a majority of the court of appeals in *Mount* v. *Mitchell et al* 31 N. Y. 360, where a similar question was considered, which is: "That two statutes shall stand together and both have effect, if possible, for the law does not favor

repeals by implication, and are never allowed but where
inconsistency and repugnancy are plain and unavoidable;
and all acts *in pari materia* should be taken together as if
they were one law."    Said § 281 seems to have been taken
from §§ 1, 2, and 3, of chapter 295, of the laws of New
York, passed in 1850.    The New York law, however, was
more specific and better guarded.    It was as follows:
"Notwithstanding the death of a party after judgment,
execution thereon against any property, lands, tenements,
real estate or chattel reals, upon which said judgment
shall be a lien, either at law or in equity, may be issued
and executed in the same manner and with the same
effect as if he were still living, except that such execution
cannot be issued within a year after the death of the
defendant, nor in any case unless upon the permission
granted by the surrogate of the county, who has jurisdic-
tion to grant administration or letters testamentary on the
estate of the deceased judgment debtor, which surrogate
may, upon sufficient cause shown, make an order granting
permission to issue such execution as aforesaid."    Had
§ 281 of the Oregon Code been restricted to the issuance of
execution against property upon which the judgment was
a lien, either at law or in equity, even though it allowed it
to be issued without permission from the county court, it
would have been much better than it is, and less liable to
occasion difficulty and confusion in the administration of
the estates of deceased persons.    It is very unfortunate
that the New York law referred to had not been literally
adopted, excepting the necessary changes.    The provision
could have been carried out substantially in accordance
with its terms, but as it is worded in the Oregon statute its
meaning must be construed widely different from what its
language implies, otherwise several of the sections of the
probate Act will necessarially be nullified.    Section 1141 of
the Code declares in effect that no sale of the property of an
estate is valid unless made by order of the court or judge
thereof, as prescribed in title 6 of chapter 15, unless other-
wise provided in said chapter;  and yet said § 281 permits

an execution to be issued upon a judgment recovered in the lifetime of a party, in the same manner and with the same effect as if he were still living, at any time after six months from the granting of letters testamentary or of administration upon his estate. Now how can these two sections be harmonized if a sheriff to whom such an execution is delivered is to be permitted to sell the property of the estate by virtue thereof?

. Again, how can the order of preference in the payment of claims against the estate as provided by § 1183 be maintained in such case? And again, what justice would there be in making the executor or administrator personally liable to each creditor included in the order determining and prescribing the amount of assets applicable to the claims presented, as provided in § 1190, if the sheriff by virtue of such execution could seize the identical assets and apply them to the payment of a judgment which had never been presented to the executor or administrator? At common law the judgment in such a case had to be reviewed by a writ of *scire facias,* which stated that the testator died, having made the defendant his executor, or, in the case of an administrator, the death of the intestate, and the grant of administration, and it called on the defendant to show why the plaintiff could not have execution of the debt or damages, to be levied of the goods and chattels which were of the testator or intestate, at the time of his death, in the defendant's hands to be administered. Pages 2104, 2105, Williams on Exec. And, by the common law, the executor might plead that he had no assets, or not enough to satisfy the plaintiff's demand after satisfying other demands having a preference; and the plaintiff either admitted this plea, and then could only take judgment of assets when they should thereafter be received, or he took issue on the plea, and then his judgment still was special as in other cases. *Mills* v. *Thursby,* 12 How. Pr. 391. Counsel for the respondent says that two results were effected by section 281 and subdivision 2, section 276, of the Oregon Code: (1) To brush away the technicalities

of the common law and allow the issuance of execution upon the compliance with certain directions as to form; and (2) to place the judgment creditor in the same position and allow him to realize upon his claim in precisely the same manner and with the same effect as if his debtor were still living. I am inclined to regard such a result as far more intolerable than an endurance of the technical rules of common law to which the counsel refers. In *Jewett* v. *Smith*, 12 Mass. 308, it was held that a sheriff who, by irtue of an execution, had seized goods which belonged to the judgment debtor, he having died after the issuing of the execution, could not, by virtue thereof, defend against an action of replevin brought against him by the administrator of the judgment debtor, where the estate proved to be insolvent. "To admit this defense," said the court, at page 310 of that case, "would be to defeat the object of the statute for the distribution of insolvent estates, which is in equal distribution of the estate of the deceased among all his creditors." And we could say with equal cogency that to admit the constructions of the two sections referred to, as claimed by the respondent's counsel, would not only defeat a similar provision of our Code in regard to the distribution of estates of deceased persons, but would seriously affect several other provisions thereof, which are of equal importance. These suggestions, I am aware, are wholly gratuitous. That the respondent was entitled to have the execution issued cannot be successfully controverted. The sections of the Code referred to clearly authorize the right, and this court, in Knott v. *Shaw, supra*, sanctioned it.

We must determine, therefore, that the grounds of error relied on by the appellant are untenable. But it is important that it be understood that our affirmance of the decision of the circuit court appealed from merely determines the right to have an execution issued in such a case requiring the sheriff to satisfy the judgment out of any property in the hands of the debtor's personal representatives, heirs, etc. In what way the sheriff will be able to

accomplish that end must be reserved for consideration until such time as the question shall arise. Whether the sheriff has the right, under the execution, to seize property. in the hands of the executor, which is being administered upon, and apply it to the payment of the judgment, is not before the court.

LORD, J., concurring.—The only question here is, the right of the plaintiff to have an execution issue, and the result reached accords this right, as seems to have been held in *Shaw* v. *Knott, supra,* but how the execution may be enforced against property in the hands of an administrator or executor is a matter not presented by this record, and upon which I refrain from expressing any opinion until that phase of the question shall come properly before us, and only then after full discussion.

I am authorized to say that STRAHAN, J., concurs in this view.

[ON RE-HEARING.—Filed October 17, 1889.]

THAYER, C. J.—Upon the hearing of this case we were of the opinion that the respondent was entitled, under the statute, to have an execution issued upon the judgment recovered against Ben Holladay in his lifetime, and ordered an affirmance of the decision of the circuit court appealed from. In making that order, however, we overlooked the matter of the form of the execution which had been issued, and which the appellant sought to have set aside. We supposed that the execution was in the general form as prescribed by the Code, but discover now that it contains recitals and requirements which we think the Code does not authorize. The recital that the appellant and Geo. W. Weidler, as receivers of the court, held certain of the property of the deceased, and that said Weidler was the trustee, and held as such, or under his control, other property belonging to the deceased, including about 5,331 shares of the capital stock of the Willamette Real Estate Company, was improper. The court out of which the execution issued could not have known judicially the facts recited. Nor was it proper to include in the

execution the command to the sheriff to satisfy the judgment, etc., out of the said stock claimed to be so held. The provision of the Code to the effect that notwithstanding the death of a party after judgment, execution thereon may be issued and executed in the same manner and with the same effect as if he were still living, does not authorize the judgment creditor to specify in the writ of execution any particular property out of which the sheriff must satisfy it. The writ must be issued against the property of the judgment debtor generally, requiring the sheriff to satisfy it out of any property in the hands of the debtor's personal representatives, heirs, etc. The sheriff must ascertain, as in other cases, what property is subject to levy under the writ. The death of the judgment debtor since the recovery of the judgment, and that six months have elapsed from the time of granting of letters testamentary or of administration upon his estate, should, of course, be suggested in the *præcipe* for the writ, but all other parts of the affair must be left to the sheriff. The judgment creditor, however, has the right to institute auxilliary proceedings in such a case, the same as in any other, to aid the enforcement of the execution, but such proceedings cannot be taken until it is ascertained that they will be necessary.

The appellant's counsel insists that no execution can issue in such a case unless the judgment-creditor has a lien upon property belonging to the estate of the deceased, and then only as against such property. But the provision of the Code referred to gives the judgment creditor the right to a general execution. It says that, "Notwithstanding the death of a party after judgment, execution thereon against his property, etc., may be issued and executed in the same manner and with the same effect as if he were still living." We suggested, however, in the former opinion delivered in the case, that said provision of the Code would have to be construed with the provisions of the probate Act adopted at the same time, and that it was very doubtful whether the sheriff, by virtue of such a

writ, would have a right to interfere with the property and assets of an estate in the hands of an executor or administrator for the purposes of being administered upon, unless the judgment had become a lien upon the property or established a paramount right against it. But that question has not arisen in the case, and we did not attempt to determine it, further than to indicate what our views might be should it ever arise. The circuit court should have required the writ of execution issued to be modified as we have indicated herein.

The case will therefore be remanded, with directions to amend the writ of execution as suggested. No costs or disbursements will be allowed to either party upon this appeal; each party will be required to pay one-half of the fees of the clerk of this court chargeable herein