Argued 14 Nov.; decided 9 Dec., 1901; rehearing denied 27 Jan., 1902.

## WATSON *v.* MOORE.

[66 Pac. 814.]

EXECUTION AGAINST PROPERTY OF DECEDENTS—STATUTES.

Under Section 281 of Hill's Ann. Laws, providing that an execution may issue on a judgment against a deceased debtor, "and may be executed in the same manner and with the same effect as if he were still living, but such execution shall not issue within six months from the granting of letters testamentary or of administration, without leave of the county court," an execution cannot issue against the property of a deceased debtor prior to the appointment of an executor or administrator.

From Columbia: THOS. A. McBRIDE, Judge.

James F. Watson, trustee, and another recovered a judgment against H. B. Borthwick, in 1895. At half past eight o'clock on the morning of the ninth of October, 1899, Borthwick died, and four hours later executions were issued on said judgment and instantly levied on his property. The next day

D. J. Moore was appointed administrator of the estate and petitioned for the recall of the executions. The petition was granted, the executions were recalled and quashed, and the plaintiffs appealed.                                    AFFIRMED.

For appellants there was a brief over the name of *Platt & Platt*, with an oral argument by *Mr. Harrison G. Platt.*

For respondent there was a brief over the name of *Cotton, Teal & Minor*, with an oral argument by *Mr. Joseph N. Teal.*

MR. JUSTICE WOLVERTON delivered the opinion.

The plaintiffs, having an unsatisfied decree against H. B. Borthwick, caused several executions thereon to issue contemporaneously to the sheriffs of different counties subsequent to his death and prior to the appointment of an administrator of his estate, which, being decreed by the court below to have been improvidently issued, were recalled and quashed, and the plaintiffs appeal.

The sole question presented is whether an execution may issue during such period, and depends entirely upon the proper construction or rendition of the statute pertaining to the enforcement of judgments in civil actions. There are three clauses bearing directly upon the matter in hand. The first provides that "the party in whose favor a judgment is given which requires the payment of money, the delivery of real or personal property, or either of them, may at any time after the entry thereof have a writ of execution issued for its enforcement as provided in this title;" the second, that, "if it be issued after the death of the judgment debtor, and be against real or personal property, it shall require the sheriff to satisfy the judgment, with interest, out of any property in the hands of the debtor's personal representatives, heirs, devisees, legatees, tenants of real property, or trustees, as such;" and the last, that, "notwithstanding the death of a party after judgment, execution thereon against his property, or for the delivery of real or personal property, may be issued and executed

in the same manner and with the same effect as if he were still living; but such execution shall not issue within six months from the granting of letters testamentary or of administration upon the estate of such party, without leave of the county court or judge thereof'': Hill's Ann. Laws, §§ 274, 276, subd. 2, § 281. All these clauses must be construed in *pari materia* as they are component parts of a general act adopted in the identical form here set out in 1862: Deady's Gen. Laws, 1845-1864, p. 208. Although section 276 has since been amended, it left subdivision 2 in the exact language employed in the original act. Section 274 grants authority generally for the issuance of the writ for the enforcement of the judgment as provided in the title, but it does not attempt to define when, and under what circumstances, it shall issue. Subdivision 2 of section 276, reveals an intendment that it may issue after the death of the judgment debtor; and section 281 expressly so declares, and, further, that it may be executed in the same manner, and with the same effect, as if he were still living. This general authority, however, is qualified by what follows, namely: ''But such execution shall not issue within six months from the granting of letters testamentary or of administration * * * without leave of the county court or judge thereof.''

At common law execution could not issue except the judgment was revived through the instrumentality of a writ of *scire facias,* which brought in new parties, and gave them their day in court; but the use of such writ has long since been dispensed with [*Bower* v. *Holladay,* 18 Or. 491 (22 Pac. 553); *Wallace* v. *Swinton,* 64 N. Y. 188] and the statute gives the only remedy available. Now, section 274 gives the party in whose favor a judgment has been rendered an execution, and the first clause of section 281 provides that it may issue notwithstanding the death of the judgment debtor; but when and how is determined by the latter clause of the section. There is no statutory provision for the issuance of any execution between the time of the decease of the judgment debtor and the granting of letters testamentary or of administration, and hence no such authority exists. The judgment creditor must

abide the appointment of an executor or administrator, and the lapse of six months thereafter before he can have his writ, except by leave of the county court or judge thereof, which can be granted only after the appointment; and such is the plain meaning of the statute,—"such execution shall not issue within six months from the granting of letters." This is a qualification of the general statutory right to have execution, and marks the limit as it respects the time within which it may issue in case of the death of the judgment debtor; so it clearly appears that plaintiffs' executions were improvidently issued.

The question as to how the writ should be executed when issued is not a matter of present concern, as it is not presented by the record, and what we might say respecting it would be *obliter*.

There will be an affirmance of the decree.    · AFFIRMED.

Argued 12 November; decided 2 December, 1901; rehearing denied.