## ACCARDI v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 22, 1926.)

No. 7319.

1. **Counterfeiting** ⚖=18—Circumstantial evidence to establish fraudulent possession of counterfeit stamps must point unerringly to defendant's guilt (Comp. St. § 6076).

To establish by circumstantial evidence the offense, defined by Act March 3, 1897, § 7 (Comp. St. § 6076), of having in possession counterfeit internal revenue stamps with intent to defraud, the circumstances must point unerringly to possession of the stamps by defendant.

2. **Criminal law** ⚖=273—Plea of guilty must be of free will and with full knowledge.

"Pleas of guilty" are judicial confessions made in court, and it is essential that they be made of the free will of the party, and with full and perfect knowledge of the nature and consequences of the confession.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Plea of Guilty.]

3. **Criminal law** ⚖=409, 447—Plea of guilty is not conclusive evidence in another case; defendant may show he did not intend it and did not know nature of charge.

A plea of guilty, when offered in evidence against the defendant in another criminal case, in which the fact admitted by the plea is material, is regarded as extrajudicial in that case, and defendant may show that he did not intend to enter the plea recorded, or did not know at the time the nature of the charge.

4. **Counterfeiting** ⚖=18.

Evidence held insufficient to sustain conviction for having in possession counterfeit internal revenue stamps with intent to defraud.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Davis, Judge.

Criminal prosecution by the United States against Mike Accardi. Judgment of conviction, and defendant brings error. Reversed and remanded.

Verne Lacy, of St. Louis, Mo., for plaintiff in error.

C. J. Stattler, Asst. U. S. Atty., of St. Louis, Mo. (L. H. Breuer, U. S. Atty., of Rolla, Mo., on the brief), for the United States.

Before LEWIS, Circuit Judge, and TRIEBER and KENNAMER, District Judges.

LEWIS, Circuit Judge. In October, 1925, plaintiff in error was convicted and sentenced on an indictment which charged him with committing the offense defined by section 7 of the Act of March 3, 1897 (29 Stat.

628; U. S. Comp. Stat. § 6076), to wit, having in his possession, with intent to defraud, forged and counterfeited internal revenue strip stamps in the likeness of genuine strip stamps required by the act to be used in the bottling of distilled spirits in bond. This indictment was returned June 19, 1925, and charged that the offense was committed on or about May 15, 1925.

The complaints made here that require our attention are: (1) That the court erred in overruling a motion for an instructed verdict at the close of the testimony, because the proof was insufficient to sustain a verdict of guilty, and (2) improper and prejudicial questions propounded to one of the witnesses for the defense by the district attorney.

Plaintiff in error resided at 917 High Street in the City of St. Louis. There is a brick garage in the rear of premises known as 924 High Street, diagonally across from 917. In the forenoon of May 15, 1925, two city police officers went to the garage, its rear doors were open and they went in. They saw 15 sacks of sugar lying against a partition wall made of new lumber. In the partition there was a locked door. They took off this door and found back of the partition two barrels partly filled with whisky, five pint bottles of whisky, several five-gallon cans (contents not stated), and a large number of counterfeit strip stamps. They took off and carried away with them the lock on the garage door and the lock on the partition door. One of them was a Yale lock. They found Accardi at 917 High Street and took him to the police station and there found on him two keys, one of which would lock and unlock one of the locks taken from the doors and the other would lock and unlock the other lock. Mrs. Cerenow, an elderly lady, owned the premises at 924 High Street and had rented the garage to a negro who was regularly paying her $5 a month as rental at the time the officers made the discovery. She lived at 922 High Street. There was no testimony that Accardi was ever seen at or about the garage or ever used it for any purpose. He had an automobile which had been kept continuously for several years, at that time and theretofore, in a public garage at 1111 North Twelfth Street. A negro man was frequently seen at the garage, going in and out, by the tenant living in the second story at 924 High Street. Accardi's possession of the two keys was accounted for by him and two other witnesses in this way: They had been found that morning at 924 High Street by a lady and she, knowing that Accardi and wife were friends of Mrs. Cerenow, gave them to Mrs. Accardi, she handed them to her husband and he put them in his pocket. But if we put aside this explanation of Accardi's possession of the keys we do not doubt that the proof in that respect was entirely insufficient to support the verdict. The fact that the keys fitted the locks, standing alone, would not in view of the other evidence be sufficient for that purpose. That circumstance in the light of common knowledge and experience of such things, is too slight to make a case. There was no proof that Accardi ever had actual possession of the strip stamps or control and dominion over the place in which they were found. To establish his guilt of the crime charged by circumstantial proof it was necessary that the circumstances point unerringly to possession of the stamps by him. Grantello v. United States (C. C. A.) 3 F.(2d) 117.

[1] We come, then, to the only other proof that is relied on by the prosecution. On June 14, 1925, the grand jury found an indictment which charged that on or about May 15, 1925, Accardi was in the unlawful possession of "5 pints, more or less, of whisky, and 5 gallons, more or less, of alcohol at or near the premises located at 926 High Street in the City of St. Louis." This indictment was entered on the docket as Criminal Cause No. 11045. Another indictment had been found and docketed as Criminal Cause No. 11046, charging Accardi with transporting intoxicating liquor across the Missouri River bridge at St. Louis, and with unlawful possession of the liquor so transported. The district attorney offered in evidence the indictment in Criminal Cause No. 11045 and also the record and judgment of the court showing that on July 2, 1925, Accardi was arraigned, plead guilty to the charge in that cause and was fined $400. It is claimed by the district attorney that the whisky and alcohol charged in that cause as being in the possession of Accardi were the same liquors that were found in the garage on May 15, 1925, by the two police officers. There is no proof that the police officers found alcohol in the garage, nor is there proof supporting the claim of the district attorney that the liquors named in indictment No. 11045 as being in the possession of Accardi on May 15 were the liquors found in the garage, nor is it shown that Accardi, when he plead guilty in Cause No. 11045, knew that the whisky and alcohol named in the indictment were whisky and alcohol found in the garage. The garage, as said, was in the rear of 924 High Street, but there

appears to have been some confusion in the minds of the police officers in giving their testimony as to whether it was in the rear of 924 or 926. Thus, there is apparent uncertainty whether the liquors named in Cause No. 11045 were in the same place as the strip stamps, and until that uncertainty was removed Accardi's plea of guilty was not competent evidence and was without weight. Furthermore, the uncontradicted testimony of Accardi and his friend Thomas Viviano, who went into court with him on July 2d, convinces us that he intended to plead guilty only to the charge in Cause No. 11046, transporting intoxicating liquors across the bridge and having the same in his possession. It appears, however, that he was arraigned on both charges, Causes 11045 and 11046. It is plain that neither he nor Viviano fully understood what was transpiring on July 2, when he was arraigned. Neither of them seems to have fully understood what was being done at that time, their familiarity with the English language is not good. Both testified that Accardi intended to plead guilty only in the bridge case, and thought that was all he had done until they went out of the court room. On finding out that he was required to pay a fine in each case Accardi returned to the court room in great distress, he was crying, and attempted to obtain, as he claims, a correction of the error, but without success; and so his plea of guilty appears upon the record in Cause No. 11045, which he testifies he never intended to make.

[2, 3] Pleas of guilty are judicial confessions made in court; "and it is essential that they be made of the free will of the party, and with full and perfect knowledge of the nature and consequences of the confession." 1 Greenleaf on Evidence (15th Ed.) § 216. For the purposes of the case in which they are made, on the conditions named, they are conclusive and irrebuttable. When offered as evidence in another case, civil or criminal, where the fact which the plea admits is material, they are regarded as extrajudicial in that case, and a defendant against whom such a plea is offered may show that he did not intend to enter the plea recorded against him, or did not know at the time he entered the plea the nature of the charge. Modern Law of Evidence, by Chamberlayne, vol. 2, § 1594. The plea is not conclusive of the fact when so offered. Meyers v. Dillon, 39 Or. 581, 65 P. 867, 66 P. 814. Ordinarily it raises an issue of fact for the jury, but the testimony of Accardi and Viviano on this subject stands uncontradicted, and that testimony is corroborated by the circumstances that have been stated. It is our opinion that the court should have regarded the proof as establishing the fact that Accardi's plea of record was entered contrary to the fact and without his full knowledge and consent, and as to that subject there was no issue for the jury.

[4] The district attorney in cross-examination of the witness who owned the garage at 1111 North Twelfth Street, where Accardi kept his automobile, asked this question: "Q. Did he (Accardi) ever keep any of his liquor there?" The witness answered in the negative. He then asked the witness if Accardi brought any of the liquor that he was caught crossing the bridge with to that garage. Defendant's counsel objected, asked that the district attorney be reprimanded and that the jury be discharged and a mistrial ordered. The court ruled that the question was improper, denied the motion to discharge the jury, and did not reprimand the district attorney, to which action exceptions were saved. We know of no other way in which this class of cases should be tried and disposed of than to apply to them the same settled principles of law that must be applied to all other criminal cases; and to say the least the questions called for incompetent and irrelevant facts. They could have been asked for no other purpose than to prejudice the jury against the defendant. The district attorney apologized to the court and to the jury for his conduct. That may have cured the effect of his indiscretion. We are not willing to base our action on that incident.

For other reasons that have been stated the judgment is reversed and the case remanded for trial de novo.