Smith *v.* Bangs et al.

---

Milo Smith, Appellant, *v.* Justin Bangs et al., Appellees.

APPEAL FROM McHENRY.

An injunction will lie to restrain commissioners who have been appointed under an act of the legislature to obtain subscriptions to the capital of stock of a company to a certain amount, and then to proceed to the election of directors to manage the affairs of the company, after they have once acted under the law and directors have been elected, from proceeding further in the premises.

In such a case, where the prerequisites of the charter have been complied with,

the corporation comes regularly into existence, and the powers of the commissioners are at an end.

If the managers of a corporation are about to engage in an enterprise not contemplated by the charter, or to apply its funds or credit to other purposes than those specified in it, a court of equity will interfere by injunction.

A court of equity will interfere by injunction, where public officers, under claim of right, are proceeding illegally to impair the rights or injure the property of individuals or corporations, or where it is necessary to prevent multiplicity of suits.

THIS cause was heard at March term, 1854, of the McHenry Circuit Court, by J. G. WILSON, Judge.

CHURCH & WILLARD, and BURGESS, for appellant.

C. McCLURE, for appellees.

TREAT, C. J.   An act was passed on the 23d of June, 1852, incorporating " The Northern Illinois Railroad Company," with a capital of $1,000,000, to be divided into shares of $100, and with authority to construct a railroad from Chicago through McHenry county to the State line.   It appointed Justus Bangs and fourteen others commissioners to receive subscriptions to the capital stock, and required them to give thirty days' notice of the time and place of receiving such subscriptions in some newspaper published in Woodstock and Chicago.   It required them, as soon as $20,000 of the capital stock should be subscribed, to appoint a meeting of the stockholders for the election by ballot from their own number of thirteen directors, and to give twenty days' notice of the time and place in a newspaper published in Woodstock and Chicago.   It made the commissioners inspectors of the election, and provided that their certificate should be sufficient evidence of the election of directors.   It provided that the affairs of the company should be managed by the directors, and that they should hold their offices for one year.

On the 27th of September, 1853, Milo Smith filed a bill in chancery in the McHenry circuit court against the commissioners named in the act of incorporation.   It alleged, in substance, that the commissioners gave due notice that books of subscription for the capital stock of the company would be opened in the village of McHenry on the 28th of March, 1853; that the commissioners met and opened books of subscription on that day, and that $34,100 of stock was subscribed, the complainant being a subscriber for two hundred shares; that the commissioners thereupon closed the books of subscription, and

appointed a meeting of the stockholders for the election of directors to be held at the same place on the 28th of April, 1853, and gave due notice thereof; that the stockholders met at the time and place appointed, and elected by ballot from among themselves thirteen directors, the complainant being one of the number; that the commissioners declared the persons so chosen to be duly elected directors of the company, and made a certificate to that effect; that on the 18th of July, 1853, the commissioners gave notice that they would open books of subscription on the 31st of August following, and the complainant thereupon caused an injunction to be issued and served, restraining them from receiving any further subscriptions of stock, but the commissioners, in disobedience of the injunction, permitted one of their number to subscribe for two hundred shares of stock; that on the 6th of September, 1853, the commissioners gave notice of a meeting of the stockholders to elect directors on the first of October following; that these acts of the commissioners were calculated to embarrass and injure the company, and diminish the value of the stock held by existing shareholders; and the bill prayed that the commissioners might be enjoined from holding a meeting for the election of directors, and from otherwise interfering with the affairs of the company. An injunction was issued and served on the defendants, prior to the first of October, 1853. At the March term, 1854, the court sustained a demurrer and dismissed the bill; and the complainant appealed.

The case was submitted without argument, and we are, therefore, not aware of the views entertained by the parties. If the allegations of the bill are true, and they must be so considered on demurrer, it is clear that the functions of the commissioners ceased on the election of directors. The bill shows that books of subscription were regularly opened, the requisite amount of stock subscribed, and a board of directors duly elected; in other words, the prerequisites of the charter were complied with, and the corporation came regularly into existence. The powers of the commissioners were then at an end, and the directors succeeded to the management of the affairs of the company. The commissioners had no authority to receive further subscriptions to the capital stock, or order a new election for directors. The attempt to exercise these powers was unwarranted and illegal. And this presents the question, whether a court of equity ought to interfere by injunction and restrain them from carrying their designs into execution. To allow them to proceed under these circumstances, might prove highly injurious to the interests of the shareholders. The result would

probably be two boards of directors, each claiming the exclusive control of the company; and two sets of subscribers, each claiming to be the owners of the capital stock. Such a state of things would cause much litigation, and greatly retard, if not wholly defeat, the construction of the road. There can be no doubt of the power of a court of equity to interfere and prevent such consequences. If the managers of a corporation are about to engage in an enterprise not contemplated by the charter, or apply the corporate funds or credit to any other than the purposes therein specified, a court of equity will interfere by injunction, at the instance of the stockholders. Bagshaw v. The Eastern Union Railway Co. 7 Hare, 114; Beman v. Rufford, 6 Eng. Law & Eq. R. 106; Coleman v. The Eastern Counties Railway Co. 10 Beav. 1. So a court of equity has jurisdiction to interpose by injunction, where public officers, under claim of right, are proceeding illegally to impair the rights or injure the property of individuals or corporations, or where it is necessary to prevent multiplicity of suits. The Mohawk and Hudson Railroad Co. v. Artcher, 6 Paige, 83; Oakley v. The Trustees of Williamsburgh, Ib. 262; Belknap v. Belknap, 2 Johns. C. R. 463; Ferwin v. Lewis, 4 Mylne & Craig, 249.

The decree is reversed, and the cause remanded.

*Decree reversed.*