JAMES HURST, APPELLANT, *v.* HARRIET E. HAWN, RESPONDENT.

REPEAL OF STATUTE BY IMPLICATION.—When two statutes that are in conflict are enacted by the Legislature upon the same general subject, the last enactment furnishes the rule of action and repeals the prior act by implication, so far as they conflict.

PREFERENCE TO APPLICANT FOR SCHOOL LANDS.—Upon an application to the Board of School Land Commissioners to purchase a part of the thirty-sixth section (school land) under the law of 1868, the first appli-

cant is entitled to preference after the six months have expired in which settlers are required to make application.

DECISION OF SCHOOL LAND COMMISSIONERS IS CONCLUSIVE UPON THE STATE.— The decision of the Board of School Land Commissioners is final so far as the interest of the State is concerned, but does not prevent a party from showing, in a proper proceeding, that a deed made by the board was obtained through fraud or upon false testimony.

APPEAL from Wasco County.

Harriet E. Hawn, the respondent herein, commenced an action at law in the Circuit Court for Wasco County at the November term thereof, 1874, against James Hurst, the appellant, to recover possession of certain real property described in her complaint. After filing an answer in said action, the appellant filed his bill in equity in the nature of a cross-bill to said action, setting up the fact that the land in question was a part of section thirty-six; that it was school land; that he had been in possession of the same since November, 1858; that the said land was surveyed about February, 1860; that about the month of November, 1870, he made an application to the Board of Land Commissioners for the sale of school lands of the State of Oregon to purchase the same; and that about a month prior to the time of his application to purchase said land the respondent herein had made an application to said board to purchase the same land.

It is then averred that respondent's application to the school board was defective and insufficient in this, that said application was not accompanied by the affidavit of the respondent herein, or any one, that she was a settler on said tract of land.

The bill then avers that notwithstanding said defect in respondent's application, and notwithstanding appellant's application to purchase said land, said Board of Land Commissioners did sell and convey to respondent, about November, 1873, said land. And after an allegation that the action of the Board of School Commissioners was illegal, the bill prays the court to adjudge and decree that the defendant therein (respondent herein) shall convey the land in controversy to the plaintiff in said bill (appellant herein)

on his paying to respondent the sum paid by her to the State of Oregon.

To this bill there was a general demurrer interposed by the defendant therein, which was sustained by a *pro forma* decision in the court below.

*Humason & Condon and N. H. Gates,* for Appellant.

*J. C. Cartwright,* for Respondent.

By the Court, BURNETT, J.:

The question presented by this appeal is, which of these parties was legally entitled to purchase the land in question from the Board of School Commissioners? The facts are set out in the bill, and show that the respondent made the first application to the Board of School Commissioners, and if that application was made in accordance with the law in force at that time, then the board did right in making her a deed and in rejecting the subsequent application of the appellant.

In order to ascertain what the law was under which the title to the premises was obtained by Mrs. Hawn (respondent herein) it will be necessary to examine the different statutes that have been enacted upon the subject of the sale of lands belonging to the State.

The law of 1864 provided for the sale of certain State lands to actual settlers, not exceeding a half-section to any one settler, for the price of one dollar and a quarter per acre; but it was provided by § 12 of the same law, "that nothing in this act shall be so construed as to include sections sixteen and thirty-six, or the funds heretofore received from the sale of the same." Then it is clear that the land in question is not within any of the provisions of the act of 1864, and we must next examine the act of 1866, together with that of 1868, to see what the law was at the time these applications were made to purchase the land in question.

The act of 1866 gave the Board of School Land Commissioners authority to sell sections sixteen and thirty-six, and all lands selected in lieu of such sections, in addition to the

lands placed in their charge to sell by the act of 1864. While the act of 1866 was in full force, there is no doubt but that the appellant might have made an application to the Board of Commissioners under § 2, subdivision 1 of that act, and purchased the land in question at one dollar and a quarter per acre. This he failed to do.

The rights extended to settlers of the class to which appellant claims to belong by act of 1866, was materially changed by the act of 1868 in two particulars: First. In regard to the time in which application to purchase should be made; and, second, the price that should be paid.

The first section of the act of 1868 provides that all the school and university lands belonging to this State shall be offered for sale and sold upon the terms herein provided for and not otherwise, etc. It further provides that settlers shall have the preference in the purchase of all such lands as may be found to be occupied at the time of the passage of that act, or within six months after taking effect of the same; but after the expiration of six months any person shall be entitled to purchase any of such lands in lots not to exceed one hundred and sixty acres not settled upon, in accordance with the provisions of § 3 of that act. The next section provides that the price of all lands shall be that fixed by the county school superintendent of the county where such lands lie.

This act was approved October 28, 1868, and took effect about the 1st of February, 1869. Under this act the appellant had the preference for six months, and might, at any time prior to the 1st day of August, 1869, have made an application to purchase the land in question, but would have then had to pay, not one dollar and a quarter per acre, but the price put upon it by the county school superintendent of Wasco County. No such application was made, and about October, 1870, more than a year after the preference of the appellant had expired, and when the land was in market, and for sale to any one that would make a proper application to the board of commissioners to purchase it, the respondent made such an application, and we think the

board decided correctly in holding that she was entitled to purchase the land, being the first applicant.

It seems to be the object of the law to convert these lands into money, and place the same at interest, so that some benefit may be derived from these grants to the State for the benefit of the school fund, and not allow persons to remain in the possession and use of them an indefinite length of time, paying nothing therefor and preventing their being sold; hence they were required to make an application to purchase within six months after their settlement.

The act of 1868 is an independent act, one object of which was to place in market a class of State lands not before that time offered for sale, and to provide the manner and terms of the sale of all the school and university lands belonging to this State; and when that act took effect, it became the rule of action on that subject, and repealed by implication all prior acts that conflict with it. There was a question raised, in the appellant's brief, as to the effect of § 15, chapter 29, of the act of 1864, which reads as follows:

"The commissioners may make rules for the transaction of business under this chapter, and shall decide all questions about priority of settlement and other disputes between applicants, and their acts and decisions shall be final."

The action of the board is final under this section, so far as the interests of the State are concerned; but when the board has decided a case, and made a deed to one applicant in preference to another, the title is then out of the State, and a party claiming the land under the same law may, by a proper proceeding, show that the deed was obtained illegally, or by fraud or perjury.