Argued 4 November; decided 25 November, 1901.

## HOUCK *v*. ASHLAND.

[66 Pac. 697.]

CONSTRUCTION OF CITY CHARTER—INTOXICATING LIQUORS.

1. The charter of the City of Ashland, Laws, 1901, p. 287, considered in its entirety, confers on the city council power to regulate the sale of intoxicating liquors, and to require a license therefor, and not merely a power to license and regulate barrooms and drinking houses and places where liquor was sold.

CONSTRUCTION OF PARTLY VOID ORDINANCE.

2. An ordinance partly void for lack of power to enact it will be valid so far as it is within the authority conferred on the council, and void so far as it is beyond that authority, where the parts are severable.

ORDINANCE—PROHIBITING SALES OF INTOXICATING LIQUORS.

3. Ashland City Charter (Sess. Laws, 1901, p. 287,) provided that the city council should annually vote on the question as to whether a license should be issued for the sale of intoxicating liquors for the ensuing year, and that, if the majority voted in the negative, no license should be issued during that time. After the time when the first vote had presumably been taken, an ordinance was passed making it a misdemeanor for any person to sell liquor without a license. *Held,* that by its failure to provide a means by which licenses could be obtained, and by the ordinance passed, making it an offense to sell without a license, the city had effectually prohibited the sale of liquor, and no prohibitory ordinance was necessary to prosecute for sales.

From Jackson: HIERO K. HANA, Judge.

Jesse Houck and Joseph Dame were convicted of violating an ordinance against selling intoxicating liquors without a license, and appeal.        AFFIRMED.

For appellant. there was a brief and an oral argument by *Mr. C. B. Watson.*

For respondent there was a brief over the names of *W. C. Hale, Jas. R. Neil,* and *H. L. McWilliams,* with an oral argument by *Messrs. Hale* and *McWilliams.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

The appellants were convicted in the Recorder's Court of the City of Ashland of violating "an ordinance declaring the illegality of keeping or maintaining a barroom, drinking shop, drinking saloon, tippling-house, clubhouse, or clubroom, or other place in which spirituous, vinous, malt, or intoxicating liquors are kept, sold, disposed of, or given away, and the selling, disposing of, furnishing, or giving away spirituous, vinous, malt, or intoxicating liquors, without first having procured a license therefor from the city council of the City of Ashland, Oregon," approved March 12, 1901, by unlawfully selling and delivering to "one K. J. Johnson one pint of intoxicating liquor, to wit, whisky, without first having obtained a license so to do." The ordinance referred to provides:

"Sec. 1. It shall be unlawful for any person or persons to keep or maintain within the limits of the City of Ashland, Oregon, any barroom, drinking shop, drinking saloon, tippling-house, clubroom, clubhouse, or any other place in which spirituous, vinous, malt, or intoxicating liquors are kept, sold, disposed of, or given away, without first duly procuring a license therefor from the city council of the said City of Ashland.

"Sec. 2. It shall be unlawful for any person to sell or dispose of any spirituous, vinous, malt, or intoxicating liquors within the City of Ashland, Oregon, without having first duly procured from the city council of the City of Ashland, Oregon, a license therefor."

By its charter, in addition to the general power to enact by-laws and ordinances not in conflict or inconsistent with the laws of the state or of the United States, and to provide for the punishment of violators thereof, the city is given the "full and

exclusive right, within the corporate limits, to provide pre-
requisites to licensing, and to license, regulate and control
\* \* \* drinking saloons, barrooms, clubrooms, or any other
place within the city where spirituous, vinous, malt, or intoxi-
cating liquors of any kind are kept, sold, disposed of, or given
away, in any quantity whatever, except upon the prescription
of a duly licensed physician, and for medicinal purposes ex-
clusively. \* \* \* No license for the sale or disposal of
spirituous, vinous, malt, or intoxicating liquors as a beverage
within the corporate limits, shall be granted for a longer period
than the municipal year, nor for a less sum than $800 nor more
than $1,000, as the city council may determine, for such mu-
nicipal year. No person shall be licensed to sell or dispose of
spirituous, vinous, malt, or intoxicating liquors, by the city
council, unless he shall first give bond, in the penal sum of
not less than $2,000, nor more than $5,000, payable to the City
of Ashland, Oregon, with at least two good and sufficient
sureties. \* \* \* It shall be the duty of the city council,
at the first regular meeting of such city council to be held after
the passage of this act, and annually thereafter, between the
first and fifteenth days of January of each year, to take a vote
on the following question: 'Shall the city council of Ashland,
Oregon, license the sale of spirituous, vinous, malt, or intoxi-
cating liquors within the corporate limits of the City of Ash-
land, Oregon, for the ensuing year.' If a majority of such
city council, or one half of the whole number of such city
council, together with the mayor, vote against the issuance of
such liquor license, then no such license can be issued by such
city council for such municipal year. \* \* \* If a majority
of such city council, or one half of the whole number of such
city council, together with the mayor, vote in favor of the issu-
ance of such liquor license, then the mayor and city council
shall issue such license to any reputable male citizen, over
twenty-one years of age, applying therefor, and who may have
conformed, and agrees to conform, to all of the requirements
of this charter and all of the laws and ordinances of the said
City of Ashland": Laws, 1901, p. 287. Upon a writ of re-

view sued out of the circuit court by the appellants, the judgment of the recorder's court was affirmed, and hence this appeal.

1.   It is urged that section 2 of the ordinance under which the appellants were convicted is void, because the city has no power or authority to license or regulate the sale of intoxicating liquors, or to make it an offense to sell such liquors without a license.   This argument is based on the clause in the charter conferring the power to license, regulate, and control drinking saloons, barrooms, etc., ignoring the other provisions thereof. The contention is that the power to license, regulate, and control places where intoxicating liquors are sold does not authorize the city to license or regulate the sale of such liquors. Under such a power a municipality may make it unlawful for any person to sell or deliver to another intoxicating liquors, to be drunk on the premises of the vendor, without first obtaining a license therefor: *In re Schneider,* 11 Or. 288 (8 Pac. 289) ; *Portland v. Schmidt,* 13 Or. 17 (6 Pac. 221).   And in view of the rule hereinafter referred to, that an ordinance of this kind may be enforced so far as authorized by the charter, although its language may be broad enough to cover sales which the city has no power or authority to control, it is probable that the court would, if necessary to sustain the judgment, construe the section under which the appellants were convicted to refer to sales made by the owner or keeper of a barroom, drinking house, etc.   But we do not deem it necessary to consider this question, or to decide whether the mere power to license, regulate, and control places where intoxicating liquors are sold confers by implication, as a means of such regulation, the power to prohibit the sale without a license.   In our opinion, the several provisions of the charter, when taken together, show a clear and manifest intent on the part of the legislature to fully authorize and empower the city to license, regulate, and control the sale of intoxicating liquors.   The law is elementary that municipal authorities can exercise only such powers as are granted in express words, or necessarily or fairly implied in, or as an incident to, the powers expressly granted:

1 Dillon, Mun. Corp. (4 ed.) § 89. But the extent of their power is one of construction; the intention being in all cases to determine the legislative intent, in order to give it fair effect. We must look, then, to the entire charter, to ascertain whether it authorizes the ordinance in question. It will be observed that it provides that no license "for the sale or disposal" of intoxicating liquors shall be issued, except upon certain prescribed conditions, and that the city council shall annually determine by vote whether the city shall license "the sale of liquors." Considering these provisions in connection with the general welfare clause and the remainder of the charter, it is clear the legislature intended to, and did, confer upon the city, either directly or by fair implication, the general power and authority to license and regulate not only barrooms and drinking houses, but also the sale of intoxicating liquors. And in this conclusion we are supported by the case of *Woods* v. *Town of Prineville*, 19 Or. 108 (23 Pac. 880), where the city charter empowered the city to license, tax, regulate, restrain, or suppress places where spirituous or malt liquors were sold, provided that the state law regulating the tavern or grocery license should not apply to persons selling liquor within the corporate limits of the town; and the court said: "The plain intent of this section was to confer upon the council authority to license, tax, regulate, restrain, or suppress barrooms, tippling-houses, etc., and the exclusive authority to license the sale of liquors, within the corporate limits of said town."

2. It is next contended that the ordinance is void because it is not limited to the sale of liquors as a beverage, and does not exempt from its provisions sales made upon the prescription of a licensed physician. But the objection that a city ordinance is broader than the charter, and embraces matters not within the power of the city, cannot, as a general rule, be urged by persons who come within the power delegated; and so it is held that, even if a city ordinance prohibiting sales of intoxicating liquors embraces a class of sales which the city has no power to interfere with, it may still be enforced as to such sales as the city has power to prohibit: Black, Intox. Liq. 221; *Har-*

*baugh* v. *City of Monmouth,* 74 Ill. 367; *Ex parte Cowert,* 92
Ala. 94 (9 South. 225); *State* v. *Priester,* 43 Minn. 373 (45
N. W. 712); *Burnside* v. *Lincoln County Ct.* 86 Ky. 423 (6
S. W. 276). If, therefore, the city has no power to license,
regulate, or control the sale of intoxicating liquors upon the
prescription of a duly licensed physician, and for medicinal
purposes exclusively, it does not avoid the ordinance under
which plaintiffs were convicted, or constitute a defense for
them.

3. Again, it is insisted that no provision has been made by
the city by which a license for the sale of liquors can be ob-
tained, and therefore a conviction for the sale without a license
is void. In obedience to the writ of review, the city recorder
sent up a copy of the ordinance under which appellants were
convicted, with his certificate "that there is no other ordi-
nance now in force relating to the sale or disposal of intoxi-
cating liquors." The present objection is based upon the facts
stated in this certificate. Waiving all questions of procedure,
and assuming that it properly appears from the record that
there is no ordinance of the city providing for a license for the
sale of intoxicating liquors, we are of the opinion that the ob-
jection is untenable. The power to license, regulate, and con-
trol does not confer the power to prohibit; but the charter
provides that the city council shall annually vote upon the
question as to whether a license shall be issued for the ensuing
year, and, if the majority vote in the negative, no license can
be issued during that time. While this provision is, in terms,
confined to the matter of issuing the license, it was plainly in-
tended to prohibit the sale in case of such negative vote. It
certainly was never contemplated that in such a case the sale
of intoxicating liquors should be permitted in the city without
a license, and against the wishes of the municipality. The
general policy of the state is against such a construction of the
charter. The liquor traffic has always been deemed a matter
of legislative control, and it has been the uniform practice
since the organization of the state to make it a misdemeanor
to sell liquor without a license. It is argued, however, that,

even if the power to prohibit exists, it can only be exercised by some ordinance to that effect. As a general proposition, this is true. But the provision of the charter requiring the council to vote upon the question of license or no license was approved February 15, 1901, and made it the duty of the council to take such vote at the first regular meeting after the passage of the act. The ordinance under which the appellants were convicted was passed March 12, 1901,—presumably after the vote had been taken, and after the council had determined that no license for the sale of liquors should be issued during the current year,—and is therefore, in effect, a prohibition of the sale. By its failure to provide a means by which a license could be obtained, the city has, in effect, said that no license shall be issued; and by the ordinance making it a misdemeanor for any person to sell without a license it has as effectually prohibited the sale as if the council had enacted a prohibitory ordinance in direct terms. The case of *State* v. *Hanley*, 25 Minn. 429, is very different from the case in hand. By the statute of Minnesota the voters of a village were authorized to determine for themselves whether a license for the sale of intoxicating liquors should be granted, and it was provided that, in case a majority of the votes be cast against the license, any person thereafter selling or disposing of liquors within the village should be deemed guilty of a misdemeanor, and punished accordingly. The people of the village of Kasson voted that no license should be granted, and the defendant was subsequently indicted for the crime of selling liquor within the village without a license. The court held the indictment insufficient because the defendant ought to have been charged, under the provisions of the act, with the offense of selling after the voters of the village had voted against granting a license. The question before the court was the construction of a local statute.

It follows from these views that the judgment of the court below must be affirmed, and it is so ordered.　　AFFIRMED.