46    327
46    502
f46    632

|46    327
|48    316

## SANDYS *v.* WILLIAMS.

### 80 Pac. 642.

IMPLIED REPEAL OF STATUTE BY SUBSEQUENT ACT—CONFLICT BETWEEN LOCAL OPTION ACT AND CITY CHARTER.

1. The State local option law (Laws 1905, p. 41, c. 2), authorizing an election on petition to determine whether sale of intoxicating liquors shall be prohibited within any county or subdivision thereof (Sec. 1), providing that, on the result being for prohibition, the county court shall make an order prohibiting the sale (Sec. 10), making it an offense to thereafter sell such liquors within the inhibited territory (Sec. 15), does not supersede a city charter giving the council power to grant licenses and to provide for the revocation thereof, and to regulate and restrain liquor dealers and their places of business, the general act being only a modification of the earlier special municipal act, in that its application is dependent upon a vote for prohibition at an election. Until such an expression of the popular will the charter powers are unchanged.

CONSTITUTIONALITY OF LOCAL OPTION LEGISLATION.

2. *Quaere.* Does a local option law that is in force or not, as the vote may go in certain districts, violate Const. Or. Art. I, § 21, prohibiting the enactment of any law the taking effect of which shall be made to depend upon any authority, except as provided therein?

EQUITY—ENJOINING MUNICIPALITIES.

3. Equity will restrain the action of municipal corporations attempting to proceed beyond their delegated powers.

INTOXICATING LIQUORS—EXERCISE OF POLICE POWER.

4. An ordinance forbidding the sale of intoxicating liquors in any room or box connecting with a saloon is not an unreasonable or oppressive restriction, but is an appropriate exercise of the general police power conferred by the city charter.

VALIDITY OF EXCEPTIONS IN ORDINANCE REGULATING SALES OF INTOXICATING LIQUORS—SPECIAL PRIVILEGES.

5. An ordinance interdicting the sale of intoxicating liquors in a private room does not, by making an exception in favor of hotels, contravene Const. Or. Art. 1, § 21, inhibiting laws granting privileges which on the same terms shall not equally belong to all citizens; this not being applicable to a business which may lawfully be prohibited.

From Multnomah: MELVIN C. GEORGE, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by Harry Sandys and others against George H. Williams, as mayor of Portland, H. W. Hogue, as municipal judge, Charles H. Hunt, as chief of police, and Ben Biglin, as harbor master of that city, to enjoin the enforcement of a municipal ordinance. The complaint states, in effect, that prior to June 1, 1904, plaintiffs, having secured licenses therefor, then were and now are severally engaged in conducting in Portland either a restaurant or a saloon, and at great expense had erected in connection with their respective places of business, private rooms, booths, and alcoves, in which they supplied their guests and the general public with food and drink; that the common

council of that city passed an ordinance June 1, 1904, which, so far as deemed involved herein, is as follows:

"Section 1. No person engaged in selling spirituous, malt or fermented liquors or wines in quantities less than one quart in any saloon, barroom or restaurant in the City of Portland, shall sell any liquor to be delivered or used or that shall be delivered or used in any side room, back room, upper room or other apartment in the same or an adjoining building, and shall not maintain therein or connect therewith any alcove, booth or box * * provided, that nothing herein contained shall prohibit the serving of such liquor to guests in a hotel having a valid license to sell the same.

"Sec. 2. It shall be unlawful for any person to conduct, carry on, open or maintain any restaurant, barroom or saloon within the City of Portland that has connected therewith any box, booth, stall or any private room; provided, however, that this section shall not apply to a private room having a floor space of more than 160 square feet, nor shall it apply to restaurants in which spirituous, malt or fermented liquors or wines are not sold and in which such box, booth, stall or private room is so constructed as to be entirely open upon the side facing any hall, hallway, passageway or room, and the sides thereof do not exceed seven feet in height": Rev. Ord. Portland 1905, p. 438.

The complaint further states, in substance, that defendants are officers of the city, whose duty it is to make complaints against and prosecute persons for violating municipal laws; that, if the provisions quoted be enforced, it will work a revocation of plaintiffs' licenses, to forfeit which the council is powerless, except for a violation of the terms upon which they were issued, and plaintiffs have not broken any of the conditions thereof; that the ordinance in question is unconstitutional, in that it attempts to grant to certain citizens privileges and immunities which upon the same terms do not equally belong to all citizens, and is void because it is unreasonable and oppressive; that the defendants threaten to, and will, unless restrained, complain against plaintiffs, causing them to be arrested, prosecuted, and punished if they continue to conduct the business in which they are severally engaged; that the keeping of restaurants and of saloons

is lawful, and plaintiffs have invested large sums of money in such business, and in erecting and furnishing rooms, alcoves, boxes, and booths in connection with their several places of traffic, and thereby have built up a substantial trade; that, if such threats are executed, plaintiffs will be deprived of vested property rights, causing irreparable injury, to indemnify which the defendants are not financially responsible, and for their acts in this respect the city is not liable; and that plaintiffs have no plain, speedy, or adequate remedy at law.

A demurrer to the complaint on the ground that it did not state facts sufficient to entitle plaintiffs to the relief demanded having been sustained, and no amendment to the pleading having been made, the suit was dismissed, and they appeal.

AFFIRMED.

For appellants there was an oral argument with a brief by *Mr. Martin L. Pipes* and *Mr. John F. Logan,* to this effect.

I. The enforcement of a penal city ordinance will be enjoined where the ordinance is unreasonable and tends to destroy property, to impair vested rights, or to work irreparable injury: *Barthet* v. *City,* 24 Fed. 563; *Tuchman* v. *Welch,* 42 Fed. 548; *Nelson* v. *State Board,* 22 Ky. (6 B. Mon.), 438; *Hall* v. *Schultz,* 31 How. Pr. 331; *Platte & D. Milling Co.* v. *Lee,* 2 Colo. App. 184 (29 Pac. 1036).

II. Where a business is not prohibited by the State, a city council deriving its power from that State cannot harass those engaged in such business, through unreasonable, oppressive or arbitrary restrictions, under the guise of exercising its delegated "power to regulate": *Steffy* v. *Monroe City,* 135 Ind. 466 (41 Am. St. Rep. 436); *Champer* v. *Greencastle,* 138 Ind. 399 (24 L. R. A. 768); *Bennett* v. *Pulaski* (Tenn., not officially reported), 47 L. R. A. 278.

III. Ordinances must be uniform in their application, and affect all persons alike under similar conditions: *Simrall* v. *Covington* (Ky.), 9 L. R. A. 556; *Bills* v. *Goshen,* 117 Ind. 221 (3 L. R. A. 261); *Monmouth* v. *People,* 183 Ill. 634; *Ex parte Wygant,* 39 Or. 429 (87 Am. St. Rep. 673, 54 L. R. A. 636, 64 Pac. 867).

For respondents there was an oral argument by *Mr. John P. Kavanaugh,* with a brief over the names of *L. A. McNary,* City Attorney, and *J. P. Kavanaugh,* to this effect.

1. The State has by the charter of 1903 delegated to the City of Portland all the police power it possessed except such as is specially reserved, and that power may be exercised by the city to the same extent that the State might have exercised it within the corporate limits: Port. Charter 1903, Sec. 73, subds. 1 and 48, and Sec. 74; *Dareentel* v. *Slaughterhouse,* 44 La. Ann. 632; *Ex parte Tuttle,* 91 Cal. 589. This being so, the city is not subject to judicial supervision any more than the State is: *Villavaso* v. *Barthet,* 39 La. Ann. 252; *Taylor* v. *Carondelet,* 22 Mo. 110; *Des Moines Gas Co.* v. *Des Moines,* 44 Iowa, 505; *Monson* v. *Shawneetown,* 77 Ill. 533.

2. The city having entire control over the whole subject of intoxicating liquors, has the power to permit the sale on such terms and conditions as may seem appropriate: *Ex parte Tuttle,* 91 Cal. 589; *Schwuchow* v. *Chicago,* 68 Ill. 444; *Gunnarsohn* v. *Sterling,* 92 Ill. 569; *Burckholter* v. *McConnellsville,* 20 Ohio St. 308.

3. The rule that where there is a general grant of power without a direction as to the mode of its exercise, the acts done under the grant must be "reasonable," does not apply where all the police power of the State is conferred on the municipality (*City of Danville* v. *Hatcher,* 101 Va. 523); but is applicable only when part of the police power is conferred, or the ordinance is passed under an implied or incidental power: *Car Float* v. *Jeffersonville,* 112 Ind. 15; *Shea* v. *Muncie,* 148 Ind. 14; McQuillan, Munic. Ord., § 121, et seq.

4. Municipal councils have a large discretion in the application of the police power, and that discretion will seldom be reviewed: Cooley, Const. Lim. (7 ed.), 556; *State* v. *Loomis,* 115 Mo. 373.

5. The restaurant business is a proper subject of regulation and the council had power to prescribe the kinds of apartments that might exist in restaurants where no liquor is sold: *Munn* v. *Illinois,* 94 U. S. 113; *State* v. *Clarke,* 28 N. H. 176 (61 Am. Dec. 611); *State* v. *Freeman,* 38 N. H. 426.

6. The purpose of this ordinance being to advance the public welfare and morals, the enactment is not void because its incidental effect is to allow boxes or private rooms to be maintained in some places of business though prohibited in other resorts of the same kind: *Ex parte Tuttle,* 91 Cal. 589; *Des Moines* v. *Keller,* 116 Iowa, 648 (57 L. R. A. 243, 93 Am. St. Rep. 268) ; *Klug* v. *Georgia,* 77 Ga. 731 (4 Am. St. Rep. 106) ; *People* v. *Lewis,* 86 Mich. 273; *Goddard, Petitioner,* 16 Pick. 504 (28 Am. Dec. 259).

7. The ordinance in question (14029) does not forfeit plaintiffs' licenses. The city always has a right to regulate and control generally businesses which it has licensed: *St. Charles* v. *Hackman,* 133 Mo. 634; *Bishoff* v. *State ex rel.* 43 Fla. 67 (30 So. 808).

The local option law does not repeal all local restriction on the subject of intoxicating liquors. The language of the act indicates that local enactments are to continue in force until suspended by the vote of the electors under the act. Since the commencement of this suit the electors have defeated local prohibition in the county and precincts in which plaintiff's places of business are located.

MR. JUSTICE MOORE delivered the opinion of the court.

It is insisted by plaintiffs' counsel that the local option liquor law adopted by the people at the general election held June 6, 1904, in pursuance of initiative petitions (Laws 1905, p. 41, c. 2), deprives the common council of Portland of the power to license, regulate, or restrain the sale of intoxicating liquors in that city, and, this being so, the ordinance complained of is void, and an error was committed in sustaining the demurrer to the complaint. It is argued that the old law and the new cannot both exist at the same time, and that the local option act, being the latest expression of the direct will of the people, supersedes all prior legislation on the subject to which it relates. The act of the people adverted to does not in express terms attempt to repeal any other law. The rule in this State is that, though repeals by implication are not prohibited by the constitution (*Grant County* v. *Sels,* 5 Or. 243; *Warren* v. *Crosby,* 24 Or.

558, 34 Pac. 661), they are not favored in law or allowable, except where the inconsistency and repugnancy between a prior and a subsequent act on the same subject are plain and unavoidable: *McLaughlin* v. *Hoover,* 1 Or. 31; *State* v. *Rogers,* 22 Or. 348 (30 Pac. 74); *Continental Ins. Co.* v. *Riggen,* 31 Or. 336 (48 Pac. 476). Where, however, the enactment is a new and independent law, revising some previous policy of the State, or altering the whole subject of a prior statute, and evidently intended as a substitute therefor, although containing no abrogating clause, the later act will operate as a repeal of the old law by implication: *State* v. *Benjamin,* 2 Or. 125; *Fleischner* v. *Chadwick,* 5 Or. 152; *Little* v. *Cogswell,* 20 Or. 345 (25 Pac. 727); *Strickland* v. *Geide,* 31 Or. 374 (49 Pac. 982); *Ex parte Ferdon,* 35 Or. 171 (57 Pac. 376); *Ladd* v. *Gambell,* 35 Or. 393 (59 Pac. 113); *Reed* v. *Dunbar,* 41 Or. 509 (69 Pac. 451). If two statutes relating to the same subject are inconsistent, the later law furnishes the rule of action; and, though it contains no revoking words, it repeals the prior act by implication, so far as the conflict is concerned: *Hurst* v. *Hawn,* 5 Or. 275; *Smith* v. *Day,* 39 Or. 531 (64 Pac. 812, 65 Pac. 1055). If a later statute, however, only modifies a prior law, the two must be taken together as one act: *Winter* v. *Norton,* 1 Or. 43; *Bower* v. *Holladay,* 18 Or. 491 (22 Pac. 553); *Winters* v. *George,* 21 Or. 251 (27 Pac. 1041). A subsequent act not embracing the entire ground of an earlier statute, and not clearly designed as a substitute therefor, will not repeal the prior act unless its provisions are so repugnant to it that both cannot stand: *Booth's Will,* 40 Or. 154 (61 Pac. 1135, 66 Pac. 710). In the case last cited, Mr. Chief Justice BEAN, discussing the interpretation of statutes, says: "It is therefore the duty of the court to adopt any reasonable construction that will give effect to both acts, and, in order that one may have the effect of repealing another by implication, its conflict with the former act must be 'so positive as to be irreconcilable by any fair, strict, or liberal construction of it, which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving at the same time the force of the earlier law, and construing

both together in harmony with the whole course of legislation on the subject.' "

1. Keeping these rules in view, the charter of the City of Portland, approved January 23, 1903 (Sp. Laws 1903, p. 3), and the local option law, will be examined, to ascertain if the latter repeals the former by implication, so far as it relates to the subject of intoxicating liquors.

The charter contains the following provisions on that topic: "The council has power and authority * * to grant licenses * * and to provide for the revoking of the same": Sec. 73, subd. 21. "To regulate and restrain bartenders, saloon keepers, dealers in and manufacturers of spirituous, vinous, fermented or malt liquors, barrooms, drinking shops, or places where spirituous, vinous, fermented, or malt liquors are kept for sale, or in any manner disposed of, and the sale and disposal thereof": Sec. 73, subd. 48. The local option law provides, in effect, that whenever a petition therefor has been filed with the county clerk for an election in any county or a subdivision thereof, consisting of one or more entire and contiguous precincts, which may also embrace the whole or a part of any incorporated town or city, the county court of such county shall order an election to be held, to determine whether the sale of intoxicating liquors shall be prohibited in the designated territory: Sec. 1. When an election has been held in pursuance of the provisions of this act, the county clerk shall canvass the returns and make an abstract of the votes, and, if a majority thereof are for prohibition, the county court shall make an order declaring the result, and prohibiting the sale of intoxicating liquors within the prescribed district: Sec. 10. When such order has been regularly made, any person who thereafter, within the inhibited territory, sells, exchanges, or gives away any intoxicating liquors, shall be subject to prosecution, etc.: Sec. 15.

The adoption of the local option law was the enactment of a new statute relating to intoxicating liquors, but a perusal thereof will show that it was not intended as a substitute for the earlier law, but only as a modification thereof when its provisions become applicable to a specified district by a majority vote of the qualified electors. The county courts of the several counties of

this State are authorized to license the sale of intoxicating liquors outside incorporated towns and cities, but, before such permission can be granted, the applicant therefor is required to file a petition signed by an actual majority of the whole number of legal resident voters of the precinct in which he desires to carry on the business: B. & C. Comp. §§ 3854-3864, as amended by an act approved February 24, 1903: Laws 1903, p. 169. A majority vote for prohibition, cast in pursuance of an election held in any county or subdivision thereof, under the local option law, is tantamount to a remonstrance against the granting of a license by the county court; thereby preventing the sale of intoxicating liquors in any precinct in the designated district until the vote has been regularly changed at a subsequent election so as to be against prohibition. The local option law is therefore only a modification of the earlier statute relating to the mode of protesting against the granting of licenses to sell intoxicating liquors. The charter of Portland does not require an applicant for a liquor license to secure the signatures of any other person to his petition, nor is a remonstrance thereto necessary, the council evidently being authorized to grant the license at the request of the petitioner, and his compliance with the terms of any reasonable ordinance that may be passed relating to the subject. The refusal of a license in an incorporated town or city, in pursuance of a majority vote for prohibition, under the provisions of the local option law, is a modification of the prior acts generally applicable to municipal corporations; but, as such law was not intended to be operative until the expediency or inexpediency of granting licenses was determined by a popular vote, we think that, when the enactment by the people is considered as an entirety, it shows that it was not designed as a substitute for the former law, and hence does not repeal the prior acts by implication.

2. The question not being involved herein, it is unnecessary to determine whether or not the local option act violates Const. Or. Art. I, § 21, which is as follows: "No ex post facto law, or law impairing the obligations of contracts, shall ever be ᵖₐssed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided

in this constitution; provided, that laws locating the capital of the State, locating county seats, and submitting town and corporate acts, and other local and special laws, may take effect or not, upon a vote of the electors interested." Though there is quite a conflict of judicial expression as to the validity of a local option law, the enforcement of which in a particular locality is made to depend upon the popular will, as expressed by a vote of the people interested therein or affected thereby, the weight, in our opinion, supports the doctrine that such an act should be upheld as a legitimate exercise of the police power: Cooley, Const. Lim. (7 ed.), p. 174. "The legislature," says Mr. Justice AGNEW in *Locke's Appeal,* 72 Pa. 491, 498 (13 Am. Rep. 716), "cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny this would be to stop the wheels of government. There are many things, upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must therefore be a subject of inquiry and determination outside of the halls of legislation. Hence the necessity of the municipal divisions of the State into counties, townships, cities, wards, boroughs, and districts, to which is committed the power of determining many matters necessary or merely useful to the local welfare. Can any one distinguish between committing the determining power to the authorities of the district and to the people of the district? If the power to determine the expediency or necessity of granting licenses to sell liquors in a municipal division can be committed to a commission, a council, or a court, which no one can dispute, why cannot the people themselves be authorized to determine the same thing? If a determining power cannot be delegated, then there can be no power delegated to city councils, commissioners, and the like, to pass ordinances, by-laws, and resolutions in the nature of laws, binding and affecting both the persons and property of the citizens. If a determining power cannot be conferred by law, there can be no law that is not absolute, unconditional and peremptory, and nothing which is unknown, uncertain and contingent can be the subject of law." This matter is adverted to only in aid of

the conclusion reached that the local option law was not intended as a substitute for or to supersede the prior legislation on the subject to which it relates, but only is a modification thereof when the provisions of such law are made applicable to a county or a subdivision thereof by a majority vote of the electors.

3. It is contended by plaintiffs' counsel that the ordinance interdicting the sale of intoxicating liquors in any side room, upper room, or other apartment, etc., is an exercise of the implied power of the council, and as such is an unreasonable, arbitrary, oppressive, and a vexatious restriction, unwarranted by the charter of Portland, and, if put into execution, will compel plaintiffs and all others similarly situated, who at great expense have constructed such rooms, to remove the partitions thereof, defacing the buildings, causing excessive damages, and unlawfully depriving them of vested rights, to prevent which, and to restrain the defendants from executing their threats to enforce the provision of the ordinance, plaintiffs were entitled to an injunction, and that an error was committed in sustaining the demurrer to the complaint and in dismissing the suit. It is maintained by defendants' counsel, however, that men meet women by appointment in, or take them to, the small, closed rooms of saloons and of restaurants, for dissolute purposes, and that the city council, exercising a measure of the police power of the State with which they are clothed, possessed ample authority to regulate such places in the interest of good morals. Equity will not enjoin the action of municipal corporations while proceeding within the limits of their well-defined powers as fixed by law, but it has undoubted jurisdiction to restrain them from acting in excess of their authority, and from the commission of acts which are ultra vires: 2 High, Injunctions (3 ed.), § 1241. Where criminal prosecutions under color of a void law are threatened, which act, if enforced, would deprive a party of a property right, a preliminary injunction may properly be issued to prevent the menaced injury: 1 Spelling (2 ed.), § 24. Equity has jurisdiction to interpose by injunction where public officers, under a claim of right, are proceeding illegally

to injure the property of individuals or corporations: *Smith* v. *Bangs,* 15 Ill. 399; *Barthet* v. *New Orleans* (C. C.), 24 Fed. 563; *Tuchman* v. *Welch* (C. C.), 42 Fed. 548.

4. The right to enjoin the threatened execution of illegal municipal acts that affect property rights being unquestioned, is the ordinance complained of so clearly unreasonable as to entitle plaintiffs to the extraordinary remedy invoked? It will be remembered that the council of Portland has express legislative authority "to license" the sale of intoxicating liquors, and also "to regulate and restrain" dealers therein and places where such liquors are kept for sale. The charter confers upon the council the following authority: "To exercise within the limits of the City of Portland all the powers commonly known as the police power, to the same extent as the State of Oregon has or could exercise said power within said limits": Portland Charter 1903, § 73, subd. 1. "To make and enforce within the limits of the city all necessary * * police * * laws and regulations": Portland Charter 1903, § 73, subd. 2. This grant of power carries with it by implication, and as a necessary incident, authority to the council to pass any ordinance that reasonably tends to suppress the evil which might result from a secluded association of the sexes in small rooms, and which law is also intended to correct the morals of the visitors to these resorts, who might, in the absence of any regulation, become debased by such companionship, when their passions are inflamed and their judgments temporarily dethroned by the excessive use of alcoholic beverages: McQuillin, Munic. Ord. § 430; *Portland* v. *Schmidt,* 13 Or. 17 (6 Pac. 221); *Hubbard* v. *Medford,* 20 Or. 315 (25 Pac. 640).

"Many attempts," says Mr. Chief Justice WAITE in *Stone* v. *Mississippi,* 101 U. S. 814 (25 L. Ed. 1079), "have been made in this court and elsewhere to define the police power, but never with entire success. It is always easier to determine whether a particular case comes within the general scope of the power than to give an abstract definition of the power itself which will be in all respects accurate. No one denies, however, that it extends to all matters affecting the public health or the public morals." Much has been said in respect to the limits of police

[22—46 Or.]

power, but no text-writer or court of last resort has definitely established its confines. Its boundary must therefore be coextensive with, and measured only by, the necessity which calls for its exercise. To this extent the State may employ such power, or it may delegate the whole or a part thereof to a municipal corporation, as its subordinate agent, which is authorized to exercise within a designated territory the measure of sovereignty granted. If express legislative authority is conferred upon a city council to pass ordinances of a specified kind, and the power delegated does not contravene common right or trench upon constitutional restrictions, a municipal law passed in pursuance of such authority cannot be set aside by the courts on the ground that it is unreasonable, because legislative assemblies, and not courts, are ordinarily the judges of the necessity that calls for an application of the power. "But where the power to legislate on a given subject," says Judge Dillon in his work on Municipal Corporations (3 ed. § 328), "is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid." It will be remembered that the power to make and enforce within the limits of the City of Portland all necessary police laws and regulations is expressly conferred upon the council, but the mode of exercising this power is not prescribed by directing the specified ordinance that may be passed, in the absence of which the authority to pass the law in question is incidental only, and the municipal regulation enacted in pursuance thereof must be set aside if it is found to be unreasonable.

The unreasonableness of the ordinance must be determined by considering whether or not a necessity existed for its passage; thereby demanding an exercise of such a measure of the police power as is sought to be employed. In *State* v. *Barge*, 82 Minn. 256 (84 N. W. 911, 53 L. R. A. 428), it was held that an ordinance of the City of Minneapolis prohibiting licensed liquor dealers from constructing or maintaining, with screens, curtains, or partitions of any kind, any stall, booth, or other inclosure of any kind in or connected with any room or place in any building wherein any kind of intoxicating liquor was sold or

disposed of, was not an unreasonable exercise of the power to "license and regulate * * all persons vending, dealing in or disposing of spirituous, vinous, fermented or malt liquors," and also "full power and authority to make, ordain, publish, enforce, alter, amend or repeal all such ordinances for the government and good order of the city, for the suppression of vice and intemperance, and for the prevention of crime." In deciding that case, Mr. Chief Justice START, in speaking of the ordinance, says: "It is a fact of which we may take judicial notice that opportunities for men and women, old or young, to lounge, drink, and carouse in secrecy, free from the observation of the police and of all other persons, are demoralizing in the extreme, and directly tend to drunkenness, licentiousness, and the corrupting of unwary youth. The existence of any drinking booth, stall, or other like inclosure, with screens, curtains, or partitions, within the room named in the license for the sale of intoxicating liquors, affords just such opportunities. The ordinance in question was intended to give effect to the general legislative policy of the State, of localization and publicity for the business of retailing intoxicating drinks, and to prevent the evils incident to secret lounging and drinking places, and it must be construed so as to give effect to such intentions."

In the case at bar, if the maintenance by plaintiffs of private rooms in saloons and in restaurants, where intoxicating liquors are sold, is adopted as a business of pandering to the social vices of their customers, such pursuit renders these resorts amenable to the jurisdiction of the police power, because illegal sexual indulgence involves an injury to society: 1 Tiedeman, State & Fed. Control, p. 185. If these private rooms or "boxes" are used for immoral purposes, of which fact the council of Portland ordinarily were the proper judges, they had ample authority, as an incident to the power granted, to pass any ordinance that would reasonably tend to correct this evil; and, as the necessity for enactment of the municipal law existed, its provisions are therefore not unreasonable, when the size of the city and the urgent need of such a regulation are considered: Dillon, Munic. Corp. (3 ed.), § 327.

Nor do we think the ordinance was designed to harass those engaged in the liquor traffic, as an arbitrary, oppressive, or vexatious restriction, for the business can be continued notwithstanding a sale or delivery of intoxicating liquors in "boxes" is forbidden. In discussing this branch of the case, we have not overlooked the fact that the inhibition of the sale of such liquors to be delivered or used in any side room, etc., is not an entire prohibition of the traffic, and hence the ordinance is not in contravention of the charter of Portland; assuming, without deciding, that the power to license, regulate, and restrain the sale of intoxicating liquors does not authorize the passage of an ordinance prohibiting such sales: Black, Intox. Liq. § 227; *In re Schneider,* 11 Or. 288 (8 Pac. 289) ; *Portland* v. *Schmidt,* 13 Or. 17 (6 Pac. 221) ; *Houck* v. *Ashland,* 40 Or. 117 (66 Pac. 697).

5. It is maintained by plaintiffs' counsel that as the ordinance in question expressly exempts the keepers of hotels from its operation, thereby permitting the serving of intoxicating liquors to their guests in private rooms, but denies such privilege to persons engaged in the business of conducting a saloon or restaurant, it thereby violates Section 20 of Article I of the constitution of this State, by granting to hotel keepers having a valid license to sell intoxicating liquors privileges which upon the same terms are denied to all other persons occupied in similar employments. "An ordinance," says a text-writer, "cannot legally be made which contravenes a common right, unless the power to do so be plainly conferred by legislative grant": Dillon, Munic. Corp. (3 ed.), § 325. The right to sell intoxicating liquors, however, is not one of the privileges guaranteed to the citizens of the United States by the fourteenth amendment to the federal constitution: *Bartemeyer* v. *Iowa,* 85 U. S. (18 Wall.) 129 (21 L. Ed. 929) ; *Mugler* v. *Kansas,* 123 U. S. 623 (8 Sup. Ct. 273, 31 L. Ed. 205) ; *Kidd* v. *Pearson,* 128 U. S. 1 (9 Sup. Ct. 6, 32 L. Ed. 346). The authority of a State, by proper legislation, to regulate or prohibit the sale of intoxicating liquors, is regarded as a proper exercise of exclusive police power: Cooley, Const. Lim. (7 ed.), p. 849. In *White* v. *Holman,* 44 Or. 180 (74 Pac. 933), in commenting upon the clause of our organic law now under consideration, it was said: "It is the

danger to the public health, peace, or morals which is imminent
or reasonably to be apprehended from the pursuit of any calling
that renders the regulation or prohibition thereof by the State
an exercise of its police power to avert the threatened peril.
The degree of danger to the public is the measure of the remedy
which the State may adopt to mitigate or prevent injury to its
citizens. If the employment is only incidentally hurtful, it may
be regulated by license, but, if it is necessarily pernicious, it
may be entirely prohibited. However partial it may seem, the
State can create a monopoly of any business that may lawfully
be prohibited by it on' the grounds of public policy, without vio-
lating any constitutional inhibition, because no person possesses
an inherent right to engage in any employment, the pursuit of
which is necessarily detrimental to the public." The language
thus quoted was based on a consideration of the legal principle
announced in *Plum* v. *Christie,* 103 Ga. 686 (30 S. E. 759,
42 L. R. A. 181), where it was held that a State might create
a monopoly in any business in the pursuit of which a person was
not authorized to engage as of common right. To the same
effect is *State ex rel.* v. *Aiken,* 42 S. C. 222 (20 S. E. 221,
26 L. R. A. 345).

Mr. Justice FIELD, in *Crowley* v. *Christensen,* 137 U. S. 86
(11 Sup. Ct. 13, 34 L. Ed. 620), speaking for the court in rela-
tion to the police power of a State, says: "There is no inherent
right in a citizen to thus sell intoxicating liquors by retail. It
is not a privilege of a citizen of the State or of a citizen of the
United States. As it is a business attended with danger to the
community, it may, as already said, be entirely prohibited, or be
permitted under such conditions as will limit to the utmost
its evils." As the selling of intoxicating liquors to be used as
a beverage may injure society and impose a burden upon the
State, it is uniformly held that no person can engage in that
business of common right, as in the sale of necessary commodi-
ties; and reason supports the rule that, unless such right exists,
the State or its subordinate agent, a municipal corporation,
when duly authorized by a sufficient grant of power by the legis-
lative assembly, may confer a privilege on one class of persons
which it denies to all others. Hotels are provided with private

rooms which are in effect leased to guests, where they can secure lodging, and one of the rules prevailing at such places of entertainment is that persons occupying apartments therein are required to register their names before they are entitled to any accommodation. A man and a woman having possession of or occupying the same bedroom in a hotel generally announce by the public register their marital relation. The persons who go to saloons and to restaurants are not usually required thus publicly to proclaim their visits, and it may have been a knowledge of these methods of keeping a record in one case, and of maintaining secrecy in the other, that induced the council of Portland to exempt hotels from the provisions of the ordinance in question. It is needless, however, to speculate upon the motives that brought about the immunity adverted to, for the city council, having plenary power under the provisions of the charter of Portland, could exempt hotels from the operation of the ordinance in question without violating any constitutional inhibition.

Other questions are presented in plaintiffs' brief, but, deeming them either not involved or unimportant, they are not considered.

The complaint, in our opinion, did not state facts sufficient to constitute a cause of suit, and, no error having been committed in overruling the demurrer, the judgment is affirmed.

AFFIRMED.